UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DANIEL M. WEHNER,

    Plaintiff,

    v.

STANDARD INSURANCE
COMPANY,

    Defendant.

Case No. 2:18-cv-982
JUDGE EDMUND A. SARGUS, JR.
Chief Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's, Daniel Wehner ("Plaintiff"),

and Defendant's, Standard Insurance Company ("Defendant"), Cross Motions for Judgment on the

Administrative Record (ECF Nos. 16, 19), Memorandums in Opposition (ECF Nos. 19, 22),

Replies to the Memorandums in Opposition (ECF Nos. 22, 27), Plaintiff's Motion to Dismiss

Count II of the Second Amended Complaint (ECF No. 23), Defendant's Memorandum in

Opposition (ECF No. 28.), and Plaintiff's Reply in Support (ECF No. 29). For the reasons that

follow, the Court **GRANTS in part and DENIES in part** Defendant's Motion for Judgment on

the Administrative Record (ECF No. 22), **DENIES** Plaintiff's Motion for Judgment on the

Administrative Record (ECF No. 19), and **GRANTS** Plaintiff's Motion to Dismiss Count II

without prejudice (ECF No. 23).

## I. BACKGROUND

### A. Procedural Background

On August 15, 2016, Plaintiff applied for disability benefits under the Group Long Term

Disability Insurance Policy ("Group Policy"), which Defendant insured, administered, and issued

to the Association for Independent and Franchise Professionals ("AIFP"). (R. at 1033–47.) Defendant denied Plaintiff's application on February 23, 2017. (R. at 0946–56.) Plaintiff appealed the denial on July 26, 2017, and Defendant affirmed its denial on October 24, 2017. (R. 0965–83, 0932–38.) Plaintiff filed this action under Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., alleging he is disabled from performing the duties of his own occupation due to back and hip pain, ulcerative colitis, and severe headaches. (Compl., ¶ 9.) Plaintiff contends that, as a result, he is entitled to long-term disability benefits from Group Plan. (*Id.*) Now, both Plaintiff and Defendant move for Judgment on the Administrative Record. (ECF Nos. 16, 19.) Additionally, Plaintiff moves to dismiss Count II of the Second Amended Complaint without prejudice. (ECF No. 23.)

### B. Factual Background

Plaintiff is an independent financial planner who, when working, spent 85% of his time working at his desk, 10% of his time walking around his office, and 5% of his time traveling to meet clients. (R. at 1038.) Plaintiff has annually obtained long-term disability coverage through AIFP a trade association to which he belongs. (Pl.'s Mot. J. Administrative R. at 2.) Although AIFP does not employ Plaintiff, AIFP established Group Policy for the benefit of its employees and members. (*Id.*)

Group Plan provides benefits for individuals who are totally and partially disabled. Under Group Plan, an individual is totally disabled from their occupation "if, as a result of [p]hysical [d]isease, [i]njury, [p]regnancy, or [m]ental [d]isorder, [they] are unable to perform with reasonable continuity the [m]aterial [d]uties of [their] [o]wn [o]ccupation." (R. at 0017.) Material duties are defined as "the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a

particular occupation that cannot be reasonably modified or omitted." (R. at 0018.) An individual is partially disabled when "as a result of [p]hysical [d]isease, [i]njury, [p]regnancy, or [m]ental [d]isorder, [they] are unable to earn 80% or more of [their] indexed [p]redictability [e]arnings, in that occupation." (R. at 0018.) For claims of disability due to conditions other than mental disorders, Group Policy requires "proof of physical impairment that results from anatomical or physiological abnormalities which are demonstratable by medically acceptable clinical and laboratory diagnostic techniques." (R. at 0032.)

On August 15, 2016, Plaintiff filed a claim for disability benefits, noting that he suffered from back, legs, and spine pain, headaches resulting from a hypoxic event, and ulcerative colitis. (R. at 1040–42.) He identified his current physicians as Doctor Ruslana Kurpita ("Dr. Kurpita"), Doctor Steven A. Severyn ("Dr. Severyn"), Doctor Xixin Lin ("Dr. Lin"), and Doctor Kathryn Scholl ("Dr. Scholl"). (R. at 1044.) Prior to his filing for disability benefits he had been seen by, and the Administrative Record contains documentation from, all of the physicians he listed as well as Doctor Stephanus V. Viljoen ("Dr. Viljoen"). (*Id.;* R. at 0561–64.) He did not identify his final day of working or a date at which he became unable to work due to disability. (R. at 1033, 45). In support of his application, Plaintiff submitted an Attending Physician's Statement by Dr. Kurpita. (R. at 0873–74.) Dr. Kurpita noted that Plaintiff's "ability to function ha[d] declined significantly due to uncontrolled pain," and "he [couldn't] concentrate, sit [or] stand for more [than] 15:00 min[utes]." (R. at 0874.)

On October 13, 2016, Defendant sent Plaintiff a letter informing him that it needed additional information to determine his eligibility for long-term disability benefits. (R. at 1020.) Plaintiff told Defendant his disability may have begun around March of 2016. (R. at 1022.) He

noted he may try to work in a partial capacity and discussed with Defendant the documentation he would need to provide. (*Id.*)

On December 12, 2016, Plaintiff notified Defendant that Plaintiff needed to revise his claim from partial to full disability due to his doctor's recommendation to stop working until he healed. (R. at 0514.) He included in this notification a letter from Dr. Kurpita stating "I am recommending [that Plaintiff] [] discontinue working and focus on his recovery." (R. at 0516.) Plaintiff sent another letter on February 7, 2017, stating that he had not heard from Defendant regarding his previous correspondence and wanted to make certain Defendant knew that he needed to change his claim from partial to full disability. (R. at 0191.)

### 1. Doctors

#### a. Doctor Steven Severyn, M.D.

On November 16, 2015, Plaintiff saw pain management physician Dr. Severyn. (R. at 0790–800.) Dr. Severyn took x-rays and magnetic resonance image's ("MRI") of Plaintiff's hips due to his pain from prolonged sitting in his office. (*Id.*) Dr. Severyn found "[p]ostsurgical changes [] evident" but "[n]o acute fracture or dislocation . . ." (R. at 0790.) Dr. Severyn recommended physical therapy, anti-inflammatories, and a steroid injection. (R. at 0794.) Plaintiff saw Dr. Severyn again on February 23, 2016, for worsening leg pain aggravated by prolonged walking or sitting. (R. at 0772.) Dr. Severyn recommended, and Plaintiff agreed, to two epidural steroid injections at one to two-week intervals. (R. at 0776.) Upon receiving the injections Plaintiff indicated the pain subsided at first but then returned even more severe than before. (R. at 0758.) Dr. Severyn ordered two more epidural injections, an electromyogram text ("EMG"), and a lumbar MRI. (R. at 0760.) The EMG was performed on May 13, 2016 and came back normal with "no evidence of a left lumbar radiculopathy, lower limb mononeuropathy,

plexopathy, large fiber peripheral neuropathy or myopathy." (R. at 0761.) The diagnosis was spinal stenosis of the lumbar region. (*Id.*) The MRI was performed on March 21, 2016 and indicated post laminectomy syndrome. (R. at 0764.)

### b. Doctor Stephanus V. Viljoen, M.D.

On July 11, 2016, Plaintiff was evaluated by neurosurgeon Dr. Viljoen for reoccurring lower back and leg pain. (R. at 0562.) After a physical examination, Dr. Vilijoen noted that Plaintiff had "5/5 strength in his bilateral deltoids, biceps, triceps, wrist extenders and hand grip," full power in his "iliopsoas, hamstrings, ankle dorsiflexors and plantar flexors," and his sensory exam was normal. (*Id.*) His gate, however, was slow and somewhat painful. (*Id.*) Dr. Vilijoen concluded that "[t]his is a 48-year-old gentleman with adjacent segment disease, netrogenic claudication and segmental instability." (*Id.*) Dr. Vilijoen and Plaintiff discussed surgery, and Plaintiff was to consider the option and then contact the office. (*Id.*)

### c. Doctor Ruslana Kurpita, M.D.

Plaintiff saw Dr. Kurpita numerous times throughout 2015 and 2016, and each time Plaintiff complained of lower back and leg pain. Dr. Kurpita noted "[Plaintiff] thinks his symptoms got worse since his stress level went up at work," and his "back pain is getting gradually worse over time." (R. at 0846, 64.) In August of 2015, Plaintiff told Dr. Kurpita that his headache was a six or seven out of ten most of the time and he could not perform his work. (R. at 0831.) Dr. Kurpita proscribed Plaintiff Percocet for his pain. (R. 0800–70.) During these visits, Dr. Kurpita noted that Plaintiff's medication did not cause adverse side effects or interfere with his ability to perform activities of daily living. (R. at 0801–02, 05–06, 15, 19.) She also noted:

> He feels the pain is not controlled at all, he tries to use pain medications sparingly, since the use impairs his mental sharpness, and he needs to be focused at his job, but at the same time uncontrolled pain interferes with his ability to focus well. He feels very frustrated. He wants to continue work, but finds it more and more

difficult. In addition . . . he was experiencing concentration difficulties, irritability, memory difficulties, and sleep disturbances due to his pain and lack of sleep. However . . . during these exams Plaintiff's mental status was alert, oriented, cooperative, and his thoughts were content appropriate, however, he was also fatigued, stressed, and in considerable discomfort due to pain.

(R. at 0806–07, 11, 16, 21, 32.)

### d. Doctor Xixin Lin, M.D.

Plaintiff first saw neurologist Dr. Lin on September 23, 2015, for a constant headache, and then had seven subsequent appointments. (R. at 0720, 24, 27–28, 30, 35, 41–42.) At the first appointment Dr. Lin noted that Plaintiff's neurological exam was within normal limits. (R. at 0746.) She believed the headache likely came from his hypoxia during sedation for a previous MRI or was a tension headache. (*Id.*) Dr. Lin proscribed an MRI, an anti-seizure medication, and a follow-up exam. (*Id.*) The MRI provided a "[s]table exam" with "[n]o significant intracranial findings." (R. at 0747–48.) At subsequent visits, Dr. Lin recorded Plaintiff's neurological exams as "within normal limits." (R. at 0720, 24, 27, 28, 30, 35, 41.) Additionally, at each subsequent appointment Plaintiff indicated his symptoms were the same as the previous visit and he denied any new symptoms. (R. at 0719, 23, 26, 28, 31, 34, 38.)

### e. Doctor Kathryn M. Scholl, CNP

Throughout 2015 and 2016, Plaintiff was treated with medication by Dr. Scholl, from the Ohio State Division of Gastroenterology and Hepatology, for abdominal pain, constipation, diarrhea, and nausea. (R. at 0570–717.) Plaintiff had a normal abdominal ultrasound in March of 2015, a normal gastric emptying study in April of 2015, and an MRI in December of 2015, with no evidence of inflammatory bowel disease. (R. at 0857, 698, 647.) On May 24, 2016, Dr. Scholl noted that Plaintiff reported he was feeling much better overall and no longer experienced many

of his previous gastrointestinal symptoms. (R. at 0600.) Plaintiff told Dr. Scholl that his abdominal symptoms typically worsened with his back pain. (*Id.*)

    **f.**  **File Review, Doctor Nels L. Carlson, M.D.**

Defendant enlisted the services of a vocational consultant, Doctor Nels L. Carlson ("Dr. Carlson"), board certified in physical medicine and rehabilitation, for an independent review of Plaintiff's file. (R. at 0911.) On January 30, 2017, Dr. Carlson submitted her analysis of Plaintiff's medical file after having reviewed all of the available medical records. (R. at 0914.) Dr. Carlson concluded that Plaintiff "has chronic back and right shoulder pain," "history of an L4-S1 fusion, L3-4 spondylolisthesis," "a full thickness rotator cuff tear," and "mild bilateral osteoarthritis with trochanteric bursitis." (R. at 0196.) She went on to say, however, "it is my opinion that the claimant would not have been precluded from sedentary level work in the calendar year 2016." (R. at 0197.) Dr. Carlson went on to say:

> [T]he documentation describes claimant doing significant construction work around his house, as well as participating in hobbies and recreational activities such as fishing. In my opinion, if an individual is precluded from doing sedentary level work, I would not anticipate that he would be able to do these other activities.

(*Id.*) The documentation that describes Plaintiff participating in these activities was found on his Facebook account. (R. at 0212–16, 20–77.) As to the impact of Plaintiff's medication, Dr. Carlson responded that Dr. Kurpita had not "precluded the claimant from driving the car or doing other high level cognitive activities secondary to cognitive impairment from medications." (*Id.*) Further, Dr. Carlson noted "the documentation describing claimant doing significant construction projects around the house [] argue[s] against significant cognitive impairment." (*Id.*)

    **2.**  **Claim Denial**

On February 23, 2017, Defendant denied Plaintiff's claim. (R. at 0946–56.) In a letter to Plaintiff explaining the denial, Defendant stated to Plaintiff:

In all, despite chronic back and shoulder pain complaints, the records do not support that you had physical limitations and restrictions that would have precluded you from performing with reasonable continuity sedentary level work throughout a required 90 day Benefit Waiting Period . . . in calendar year 2016 as reported. The records also do not support that impairment following your shoulder repair procedure should preclude you from sedentary level work throughout and beyond the required [b]enefit [w]aiting [p]eriod.

(R. at 0954.)

### 3.     Claim Appeal

On July 26, 2017, Plaintiff submitted his administrative appeal including a letter he had written, medical records from a December 2016 shoulder surgery, letters from treating physicians Dr. Kurpita, Dr. Kevin D. Weber ("Dr. Weber"), and Dr. Vilijoen, and a functional capacity evaluation ("FCE"). (R. 0965–83, 0115–90.) Plaintiff did not provide any financial proof for partial disability and insisted his claim was for total disability, not partial disability, and thus, income calculations were irrelevant. (R. 0972 ("I informed you that I wanted to switch from partial to total disability. As a result, the income calculations are not relevant.").) Defendant consulted two additional independent board-certified physicians for the appeal, Dr. Hubert A. Leonard ("Dr. Leonard") and Dr. Heidi Hagman ("Dr. Hagman").

### a.     Plaintiff's Appeal Letter

In his appeal letter Plaintiff argues: (1) his constant pain is severe enough to impair his ability to perform his occupational duties, (2) his year-end commission statements show his loss of income, and (3) his activities displayed on his Facebook indicate he is trying to lead a healthy life. (R. at 0965–66.) Plaintiff also explains that while his job may technically be sedentary, this title "does not address the most important part of [his] occupation, [his] ability to think." (R. at 0966.) In his letter, Plaintiff also details some of his doctor's appointments and the pain he has expressed to his doctors. (R. at 0967–69.) In an attempt to further justify his Facebook posts

Plaintiff explains that he has fished much less in recent years than in the past, his gardening is light work that does not require thinking and he finds it therapeutic, one construction project was done with help from his wife and adult son and took longer than it would have when he was not in pain, and some of the other projects were done solely by his wife. (R. at 0971.) He concludes that he "clearly has ample evidence that [he] meet[s] [the] standard of disability." (R. at 0974.)

### b. Plaintiff's Medical Records from his Shoulder Surgery

Along with the letter Plaintiff submitted, he also included records from Dr. Jonathan D. Barlow, M.D. ("Dr. Barlow") dating from December 2016 through June 2017, as well as a letter from Dr. Barlow. (R. at 0154, 1061–73.) The records show that Dr. Barlow saw Plaintiff on December 8, 2016, and noted that he "had acute onset of right shoulder pain . . . [that was] quite painful with activity" and was likely caused by a fall eight weeks prior. (R. at 0163.) Dr. Barlow also noted that Plaintiff "has chronic back pain, which has been quite severe . . ." but "[o]therwise, he is very healthy and active." (*Id.*) Plaintiff had a shoulder operation on December 30, 2016, and Dr. Barlow diagnosed a right shoulder large acute rotator cuff tear. (R. at 0160.) At post-operative appointments Dr. Barlow noted Plaintiff often commented on his pain explaining "the pain can be pretty intense at times," he "has not returned to work," he "feel[s] like it hurts more than it should," and he is "still pretty uncomfortable." (R. at 0167, 69, 71.) Two months after the surgery Dr. Barlow stated that "he looks outstanding . . . he is right on track. He is frustrated with his progress, but overall he looks as we would expect about at this point." (R. at 0171.) Six months after Plaintiff's surgery, Dr. Barlow concluded that Plaintiff "is progressing fair" and instructed Plaintiff to begin formal physical therapy and follow up in six weeks. (R. at 0177.)

### c.   Letters from Treating Physicians

#### i.   Dr. Kurpita

Dr. Kurpita's letter in support of Plaintiff's appeal first related to Plaintiff's back pain stating that "[w]hile his pain [is] requiring stronger pain medications than NSAID's, he [is] still able to find enough strength both mentally and physically to continue work and maintain [a] healthy family life for [which] I applaud him greatly." (R. at 0148.) Dr. Kurpita commented on Plaintiff's headaches, stating they "affect[] his ability to concentrate, make important decisions, and create financial plans." (*Id.*) She also commented on his apparent ability to complete projects around the house and yard, as illustrated by his Facebook activity, and concluded that he had no time limit to complete these projects, and the projects did not require "the same sharpness of mind as financial planning." (R. at 0149.)

#### ii.   Doctor Kevin D. Weber, M.D.

Dr. Weber stated Plaintiff had daily persistent headaches that began in June of 2015. (R. at 0150.) Dr Weber noted these headaches "are worsened by staring at computer screens[,] [] concentrating on difficult cognitive tasks," and physical activity. (*Id.*) He also found the headaches come with nausea, photophobia and phonophobia. (*Id.*)

#### iii.   Doctor Stephanus V. Vilijoen, M.D.

Dr. Vilijoen submitted a letter stating Plaintiff had complained of leg and back pain but was hesitant about surgery, even though his symptoms were progressively getting worse. (R. at 0153.) He also noted that Plaintiff was "awake and alert," "ha[d] good tone," "ha[d] good strength," and was "ambulat[ing] well." (*Id.*)

### d.    Functional Capacity Evaluation

On May 18 and 19, 2017, Plaintiff had an FCE with the stated goal to "apply for long term disability through work options and apply for consideration for back surgery." (R. at 0124.) The physical therapist conducting the FCE began by noting that Plaintiff "gave maximal effort on all test items." (R. at 0117.) The physical therapist also stated that Plaintiff "demonstrated smooth and coordinated movement patterns through [the] FCE testing," but was "limited in all prolonged activity including standing, walking, sitting, kneeling, and forward bending by lumbar instability and radiating symptoms into the left leg." (*Id.*) Further, "[d]ue to recent surgical precautions, he [was] unable to use the right arm in maximal testing and completed most activities with the left arm." (R. at 0118.) Finally, the physical therapist concluded that Plaintiff was "most limited in function consistent with lumbar radiculopathy."[1]

### e.    File Review, Doctor Hubert A. Leonard, M.D.

Dr. Leonard reviewed all of Plaintiff's medical records and Facebook entries and found that "there is no single medical condition or combination of conditions that prevented reasonable continuous full-time work from March 21[,] 2016[,] through June 20, 2016[,] and continuing." (R. at 0102.) Dr. Leonard commented on Plaintiff's back pain, headaches, fatigue, and the FCE.

Dr. Leonard found Plaintiff to have well-documented chronic low back pain, but "the overall clinical picture [to be] most consistent with a chronic pain disorder and narcotic dependency." (R. at 0099–100.) Dr. Leonard stated that even with his level of pain Plaintiff was capable of lifting/carrying/pushing up to ten pounds occasionally, sitting the majority of the time with ability to change position as needed with sitting episodes limited to thirty minutes, standing and walking up to one-third of a day with ten-minute maximum limitation for standing or walking,

---

[1] Defendant points out that the May 2016 EMG found no evidence of radiculopathy. (Def.'s Mot. J. Administrative R. at 9 (citing R. at 0561).)

restriction of shoulder lifting, grasping with his right hand limited to thirty pounds, and frequent fingering, keyboarding, and use of a computer mouse. (R. at 0100.)

As for Plaintiff's headaches, Dr. Leonard stated he had never seen a chronic intractable headache due to hypoxia and that "there is no supporting evidence that claimant's headache is of such severity and persistence as to prevent reasonably continu[ing] full-time work." (*Id.*) As for Plaintiff's fatigue, Dr. Leonard concluded that "there is no support for a medical disorder causing fatigue of such severity as to prevent reasonably continuous full-time work with the limitations and restrictions" in his report. (*Id.*) Finally, Dr. Leonard noted that the FCE "produced numerous inconsistent findings when compared with medical documentation," and specifically listed those inconsistencies. (*Id.*)

### f. File Review, Doctor Heidi Hagman, M.D.

Dr. Hagman also reviewed all of Plaintiff's medical records and found that Plaintiff would have been precluded from working for twelve weeks, following his December 2016 surgery. (R. at 0089.) Other than this span, however, Dr. Hagman stated that Plaintiff would have been precluded from working full-time but he would not have been precluded from working part-time because Plaintiff would not have had "limitations to sitting, standing, walking, balancing, stopping, crouching, crawling, [or] to working on a part time basis if allowed intermittent breaks to change positions from March 21, 2016 to present due to low back pain." (*Id.*) Dr. Hagman also commented on Plaintiff's gastrointestinal symptoms, noting that "[t]here is no indications in the records . . . of any limitations and restrictions to sedentary level of work as long as he was allowed easy access to a bathroom." (R. at 0087.)

On October 24, 2017, Defendant informed Plaintiff of its denial of his appeal and its rationale for doing so. (R. at 0932–38.) Plaintiff now appeals this denial.

## II.   STANDARD OF REVIEW

A plan administrator's denial of benefits is reviewed de novo unless the benefit plan specifically gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 300 (6th Cir. 2006). Where an ERISA plan gives the plan administrator discretionary authority, the administrator's decision is reviewed under the arbitrary and capricious standard. *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). The parties agree the arbitrary and capricious standard of review is applicable here. (Pl.'s Resp. & Reply at 3; Def.'s Resp. & Reply at 2.)

Review under the arbitrary and capricious standard "is the least demanding form of judicial review of an administrative action; it requires only an explanation based on substantial evidence that results from a deliberate and principled reasoning process." *Id.*; *see also Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) ("When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."). In reviewing under this standard, however, the court is "required to review the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Glenn v. Metlife (Metro Life Ins. Co.,)*, 461 F.3d 660, 666 (6th Cir. 2006) (citing *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003)).

Additionally, "[w]hen the same entity determines eligibility for benefits and also pays those benefits out of its own pocket, an inherent conflict of interest arises." *Cox v. Std. Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). In cases where this conflict of interest arises, "because the defendant maintains such a dual role, 'the potential for self-interested decision-making is evident.'" *Evans v. UNUMProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citing *Univ. Hosps v. Emerson Elec.*

13

*Co.*, v. 202 F.3d 839, 846 n.4 (6th Cir. 2000)). "In close cases, courts must consider that conflict as one factor among several in determining whether the plan administrator abused its discretion in denying benefits." *Cox*, 585 F.3d at 299. "The Supreme Court made clear in *Glenn* that such a conflict is a red flag that may trigger a somewhat more searching review of a plan administrator's decision, but the arbitrary and capricious standard remains in place." *Schwalm v. Guardian Life Ins. Co.*, 626 F.3d 299, 312 (6th Cir. 2010) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008)). "[T]here must be significant evidence in the record that the insurer was motivated by self-interest, and the plaintiff bears the burden to show the significant conflict was present. *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 260 (6th Cir. 2006).

Here, Defendant had a conflict of interest because it both determined whether Plaintiff was eligible for benefits under Group Plan and also would have paid out these benefits. This "conflict of interest is to be considered in *applying* [the arbitrary and capricious] standard" to Defendant's decision to deny Plaintiff's disability benefits. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 293 (6th Cir. 2005) (emphasis in original). Plaintiff, however, has failed to provide significant evidence that Defendant's denial of the claim was motivated by self-interest. Plaintiff's arguments for the finding that the result was based on a conflict of interest simply reiterate the Plaintiff's arguments that Defendant's decision was arbitrary and capricious. (Pl.'s Consolidated Mem. Opp'n Def.'s Mot. J. Administrative R. & Reply Supp. Pl.'s Mot. J. Administrative R. at 3–5, ECF No. 22 [hereinafter Pl.'s Resp. & Reply].) Plaintiff provides no evidence apart from this which shows the decision was made because of Defendant's conflict of interest.

## III.  DISCUSSION

### A. Motions for Judgment on the Administrative Record on Count I

Plaintiff challenges the denial of his long-term disability benefits, asserting that he is disabled due to back, hip, and leg pain, as well as headaches that followed a hypoxic event. (Pl.'s Mot. J. Administrative R. at 1.) Plaintiff asserts he cannot work full-time because of pain, fatigue, and the effects of the narcotic medication he takes to manage his pain. (*Id.*) Plaintiff claims he is only asking for partial disability benefits, while Defendant argues Plaintiff, "having claimed to be unable to work and totally disabled . . . during the administrative proceedings, cannot change course after filing suit" and argue he has always been claiming partial disability. (Def.'s Resp. & Reply at 5.) The Defendant's arguments are well-taken. The administrative record makes clear, through Plaintiff's own statements, that during the administrative process he was seeking full disability benefits. (R. at 0914, 16, 0191, 72.) The Court must review the administrative record as it stands and cannot find a decision arbitrary and capricious based on a theory never pursued before the administrator. *See* Cox, 585 F.3d at 304 (rejecting a claimant's attempt to change the basis of their disability claim). Thus, the Court must determine whether Defendant's conclusion that Plaintiff is not totally disabled was arbitrary and capricious.

Plaintiff moves for judgment on the administrative record, asserting that the Defendant's denial was arbitrary and capricious because the Defendant improperly: (1) rejected the statements of Plaintiff's physicians and instead relied on file reviews; (2) failed to consider the intellectual aspects of Plaintiff's occupation; (3) relied on Plaintiff's social media; (4) improperly ignored the FCE; and (5) cherry-picked Plaintiff's medical test results. Defendant also moves for judgment

on the administrative record asserting its decision to deny disability benefits was not arbitrary and capricious.[2]

### 1. Plaintiff Argues Defendant Improperly Rejected the Statements of Plaintiff's Physicians' in Favor of Defendant's File Reviewers

Plaintiff asserts that Defendant's decision to deny benefits was arbitrary and capricious because Defendant relied on the conclusions of doctors who reviewed Plaintiff's file rather than the statements and conclusions of Plaintiff's treating physicians. (Pl.'s Mot. J. Administrative R. at 16, 18.) Plaintiff argues this reliance arbitrary and capricious because (a) Defendant and its file reviewers did not provide adequate reasoning for not adopting Plaintiff's treating physicians' opinions; and (b) the doctors who reviewed Plaintiff's file improperly challenged his credibility without ever examining him. *Id.*

### a. Plaintiff Argues Defendant and the Doctors Who Reviewed Plaintiff's File Did Not Provide Adequate Reasoning for Rejecting the Opinions of Plaintiff's Treating Physicians

"The Supreme Court has held in the ERISA context that 'courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physicians evaluation.'" *Evans*, 434 F.3d at 877 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 833, 834 (2003)). "The Supreme Court nonetheless has admonished that 'plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.'" *Id.*

The Sixth Circuit has also raised concerns over administrators' reliance on file reviewers when the administrators fail to provide their reasoning for not crediting a claimant's physician.

---

[2] In the same motion, Defendant moves for Judgment on Count II of the Amended Complaint. This portion of the Defendant's motion will be discussed in the next section specifically discussing Count II. *See infra* Section III.B.

*See e.g., Judge v. Metro life Ins. Co.*, 710 F.3d 651, 663 (6th Cir. 2013) (raising concerns "when the plan administrator, without any reasoning, credits the file reviewer's opinion over that of a treating physician"); *Elliot v. Metro Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006) (noting the plan administrator failed to offer any reason for rejecting the treating physician's conclusions about the claimant's failure to work in favor of the doctor doing the file reviewer's conclusions); *Okuna v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 611 (6th Cir. 2016) ("While [the plan administrator] was not required to accord special deference to the opinions of [the claimant's] own doctors, '[b]y the same token, it may not arbitrarily repudiate or refuse to consider the opinions of a treating physician.'") (citing *Glenn*, 461 F.3d at 671).

In considering whether reliance on a non-treating physicians' file review constitutes an arbitrary and capricious action, the Sixth Circuit has frequently found plan administrators' decisions based on a file review arbitrary and capricious when the plan administrators employed the doctor who conducted the file review. *See Moon v. Unum Provident Corp.*, 405 F.3d 373, 374–78 (6th Cir. 2005); *Calvert*, 409 F.3d at 295–97; *Elliott*, 473 F.3d at 620 (noting that the doctor who conducted the file review was frequently employed by the plan administrator and that the Supreme Court has warned this could incentivize the doctor to find the claimant not disabled to save their employer money) (citing *Black & Decker*, 538 U.S. at 832).

Plaintiff asserts that Defendant "and two of its reviewers improperly rejected the opinions of [Plaintiff's] physicians, opinions that were consistent with each other and consistent with the medical documentation." (Pl.'s Mot. J. Administrative R. at 18.) Plaintiff admits that Dr. Leonard stated that he disagreed with the treating physicians, but argues it is improper because neither he nor Defendant explained their disagreement. (Pl.'s Resp. & Reply at 15.)

17

Plaintiff argues that instead of providing an explanation for the disagreement, Defendant "challenges the physicians opinions by seizing on 'slivers of information that *could* be read to support a denial of coverage.'" (*Id.* (citing *Godmar v. Hewlett-Packard, Co.*, 631 F. App'x 397, 403 (6th Cir. 2015) (emphasis in original).) For example, Plaintiff argues, Defendant relied on Dr. Severyn's statement that the MRI "did not identify a spinal cause" for his pain, but Plaintiff asserts he was clearly of the opinion Plaintiff was suffering because he went on to recommend a series of epidural facet injections. (*Id.* (citing *Mokbel-Alijahmi v. United Omaha Life Ins. Co.*, 706 F. App'x 854, 864 (6th Cir. 2017) (relying on a doctor's consistent prescription of pain medication for the idea that the doctor believed the patient was suffering from chronic pain).) Similarly, Defendant pointed out a doctor's note that Plaintiff was feeling better, but Plaintiff argues that simply feeling better, without more, is not the same as being able to work. (*Id.* (citing *Elliot*, 473 F.3d at 620).)

Defendant argues that the reason it did not rely on the opinions of Plaintiff's treating physicians was because the objective evidence did not support those physician's opinions. (Def.'s Resp. & Reply at 18. (citing *Hammonds v. Aetna Life Ins. Co.*, No. 2:13-cv-310, 2015 U.S. Dist. LEXIS 36071, at *43 (S.D. Ohio Mar. 23, 2015) ("A lack of objective medical evidence upon which to base a treating physician's opinion is a sufficient reason for an administrator's choice not to credit that opinion.") (further citation omitted).

Having reviewed the administrative record, the Court finds Defendant adequately explained its reasoning for relying on the opinions of its independent reviewers instead of the opinions of Plaintiff's doctors so as to not render its decision arbitrary and capricious. In its letter denying Plaintiff's appeal, Defendant explained that it had considered the statements of all of the physicians before concluding that the medical evidence did not support a finding that Plaintiff's limitations and restrictions are so severe as to prevent him from working. (R. at 0936–37.) This

explanation is sufficient for the Court to find Defendant's decision was not arbitrary and capricious.

Group Policy requires "proof of physical impairment that results from anatomical or physiological abnormalities which are demonstratable by medically acceptable clinical laboratory diagnostic techniques." (R. at 0032.) "In this circuit, '[r]equiring a claimant to provide objective medical evidence of disability is not irrational or unreasonable." *Hunt v. Metro Life Ins. Co.*, 587 F. App'x 860, 862 (6th Cir. 2014) (citing *Cooper v. Life Ins. Co.*, 486 F.3d 157, 166 (6th Cir. 2007). Defendant asserts "it was reasonable for [it] to consider the totality of the evidence and not to simply adopt [Plaintiff's] subjective statements that were at times self-contradictory and in conflict with the objective testing, clinical findings, and his known physical activities." (Def.'s Mot. J. Administrative R. at 17.) The Court agrees. It is not arbitrary and capricious for Defendant to make a determination based on its review of the full record and in doing so emphasizing objective evidence such as the EMG and multiple MRIs instead of relying solely on Plaintiff's subjective statements about his pain and the conclusions of his physicians which relied heavily on those subjective statements. *See Frazier v. life Ins. Co.*, 725 F.3d 560, 570 (6th Cir. 2013) ("It was not arbitrary and capricious for [the defendant] to review the full record and make a considered determination rather than simply relying on [the claimant's] stated pain levels.").

Defendant's decision to deny benefits is not arbitrary and capricious due to its reliance on file reviewers instead of Plaintiff's physicians. Defendant relies on the opinions of three board certified physicians, none of whom is employed by Defendant. These physicians are independent and thus this case is unlike the Sixth Circuit cases *Moon, Calvert,* and *Elliot,* where the court found reliance on the file reviewers was arbitrary and capricious because the file reviewers were

employed by the insurance companies. *Moon*, 405 F.3d at 74–78; *Calvert*, 409 F.3d at 295–97; *Elliott*, 473 F.3d at 620.

Additionally, Dr. Leonard, a neurologist who Defendant relies on heavily, provided thorough and adequate reasoning for his disagreement with Plaintiff's physicians' conclusions. Dr. Leonard explains that he disagrees with: (1) Dr. Vilijoen's opinion that Plaintiff has neurogenic claudication; (2) Dr. Weber's opinion that Plaintiff has new daily persistent headaches; (3) Dr. Kurpita's opinion that Plaintiff suffered a hypoxic brain injury; and (4) Dr. Kurpita's opinion that Plaintiff can work around the house as portrayed in his Facebook posts but cannot perform his occupation. (R. at 0101–02.) In each instance Dr. Leonard articulates that the objective evidence suggests a different conclusion. (*Id.*) For example, he disagrees with Dr. Vilijoen based on the evidence of Plaintiff's strength, ambulation, heel and toe walking, and histories recorded by other physicians. (R. at 0101.) He disagrees with Dr. Weber based on Plaintiff's symptoms as compared to the International Classification of Headache Disorders definition. (*Id.*) Finally, he disagrees with Dr. Kurpita because the medical records and Facebook posts do not find support in her conclusions. (*Id.* at 0102.)

In sum, Defendant's reliance on the independent physicians rather than Plaintiff's treating physicians was not arbitrary and capricious because Defendant relied on other objective evidence and physicians that it did not employ, one of which provided a thorough reasoning for his disagreement with Plaintiff's physicians.

### b. Plaintiff Argues that the Doctors Who Reviewed His File but Never Examined Him Improperly Challenged Plaintiff's Credibility

This Court has expressed concern when a plan administrator relies solely on a doctor who did not examine the claimant instead of relying on the claimant's treating physician. *See Pitts v. Prudential Inc. Co.*, 534 F. Supp. 779, 789 n.3 (S.D. Ohio Feb. 19, 2008) ("[T]his Court is

20

distinguishing between the value of two treating physicians' medical opinions versus the opinion of a physician who never met with [the claimant] and relied solely upon the statements from the treating physicians.); *see also Weidauer v. Broadspire Servs.* No. C-3-07-097, 2008 U.S. Dist. LEXIS 110537, at \*29–30 (S.D. Ohio 2008) ("In this case . . . deference must be given to the evidence submitted by [the claimant's] treating physicians because they are the only ones who actually examined [the claimant].").

Additionally, the Sixth Circuit has raised concern when doctors reviewing files make conclusions as to the claimant's credibility without ever having physically examined the claimant. *Javery v. Lucent Techs., Inc.* 741 F.3d 686, 702 (6th Cir. 2014) (noting that "reliance on a file review is inappropriate where a claims administrator disputes the credibility of a claimant's complaints."); *see also Calhoun v. Life Ins. Co.*, 665 F App'x 484, 493 (6th Cir. 2016); (noting that the physician reviewing the file "did not physically examine [the claimant] as part of his review, but he nevertheless concluded that 'there is not credible evidence indicating [the claimant] is unable to perform full time sedentary or light level work.'"); *see also Calvert*, 409 F.3d at 295 (noting that while the administrator's reliance on a file review "does not, standing alone, require the conclusion [the administrator] acted improperly . . . the failure to conduct a physical examination . . . may, in some cases, raise questions as to the thoroughness and accuracy of the benefits determination").

However, "[w]hile it is true that the Sixth Circuit has raised concerns about physicians making credibility determinations about claimants without ever personally examining them, it does not follow that every file review involves a credibility determination." *Hagerman v. Am. Elec. Power Serv. Corp.*, No. 2:16-cv-9322018 U.S. Dist. LEXIS 28278, at \*25 (S.D. Ohio, Feb. 22, 2018.) "A decision not to conduct a physical examination in lieu of a paper review of the record

does not render a plan administrator's decision arbitrary and capricious," but instead is just one more factor in the overall assessment of the plan administrator's decision. *Smith v. Health Servs.*, 314 F. App'x 848, 860 (6th Cir. 2003); *see also Caesar v. Hartford Life & Accident Ins. Co.*, 464 F. App'x 431, 436 (6th Cir. 2012) ("[The insurer's] reliance on a file review rather than a physical examination *further supports a finding* that its decision was arbitrary and capricious.") (emphasis added).

For example, in *Cook v. Prudential Insurance Company*, the claimant challenged the file reviewer's decision not to do a medical examination, but there was a robust amount of objective evidence that the claimant could work such as medical records from numerous physicians and an FCE. 494 F. App'x 599, 600–02 (6th Cir. 2012). The Sixth Circuit stated:

> The existence of considerable objective evidence in support of [Plaintiff's] ability to perform sedentary work distinguishes this case from others in which the absence of a medical exam carried additionally weight—for example, where consulting physicians concluded both without examination *and* in the face of substantial contrary evidence the claimant's subjective symptoms were unreliable . . . . Given the record before us, we thus cannot conclude that [the defendant's] reliance on these file reviewers—even absent independent medical exams—merits much weight in determining whether the final decision was arbitrary or capricious.

*Id.* at 606.

Plaintiff asserts that Defendant and its file reviewers "improperly rejected [Plaintiff's] claim based on their assessment of [Plaintiff's] credibility." (Mot. J. Administrative R. at 18.) Plaintiff asserts specifically that Dr. Leonard repeatedly challenged Plaintiff's credibility. (Pl.'s Resp. & Reply at 13.) For example, he stated "[i]n a 40-year clinical practice . . . I have never seen a chronic intractable headache due to a transient period of hypoxia," and "[t]he claimant has reported fatigue, but there is no support for a medical disorder of such severity as to prevent reasonably continuous full-time work." (R. at 0100.) Defendant argues that it did not rest its decision to deny benefits on Plaintiff's credibility. (Def.'s Reply Supp. Mot. J. Administrative R.

at 27, ECF No. 27 [hereinafter Def.'s Resp. and Reply].) Defendant notes that just because it did rely in part on a file review does not mean it necessarily found his complaints to lack credibility. (*Id.* (citing *Hagerman*, 2018 U.S. Dist. LEXIS 282278, at *25).) Defendant asserts it did not deny his disability claim because his complaints were not credible, but instead because it reasonably determined the medical records lacked objective data or clinical findings of Plaintiff's inability to work. (*Id.* at 18.) The Court agrees with Defendant, and finds that as explained above, it was not arbitrary and capricious for Defendant to rely on objective evidence throughout the full record to make their determination. *See infra* Section III.1.a.

This case is similar to *Cook,* in that here, although the independent physicians chose not to examine Plaintiff, it is clear they relied on robust objective evidence to conclude he is not fully disabled. 494, F. App'x at 600–02. Thus, in light of this objective evidence, such as MRIs and the EMG, it was not arbitrary and capricious for Defendant to rely on the physicians who reviewed the files even though they never examined Plaintiff.

Additionally, Plaintiff's credibility was not entirely discredited by the physicians that Defendant relied on. For example, Dr. Leonard, whose opinion Defendant credited and relied on in making its determination, stated in his report "the claimant has well documented chronic low back pain." (R. at 0099.) Similarly, Dr. Hagman, another one of Defendant's file review doctors, stated "I am in agreement that [Plaintiff] does have chronic low back pain issues." (R. at 0088.) Although there may have been some benefit to physically examining Plaintiff, when Defendant's decision is considered in light of the robust objective evidence, and the fact that the independent physicians did consider and take seriously Plaintiff's pain, Defendant's decision was not arbitrary and capricious.

## 2. Plaintiff Argues Defendant Failed to Consider the Intellectual Aspects of His Occupation

Plaintiff asserts that Defendant and its file reviewers improperly failed to consider "the intellectual aspects of [Plaintiff's] job," and instead simply classified it as sedentary. (Pl.'s Mot. J. Administrative R. at 19; Pl.'s Resp. & Reply at 11.) Plaintiff argues "[t]he critical inquiry—the inquiry [Defendant] did not undertake—is whether, in light of the pain that disrupts [Plaintiff's] concentration and the medication that makes him groggy, [Plaintiff] is capable of performing the cognitive work that his own occupation demands." (Pl.'s Resp. & Reply at 12.)

A plan administrator's reliance on the fact that a claimant can engage in sedentary work is "not an appropriate consideration when 'the [p]lan language [at issue] explicitly state[]s that a participant is disabled so long as he is unable to perform *all* of the material and substantial duties of *his* occupation.'" *Hunter v. Life Ins. Co.*, 437 F. App'x 372, 377 (6th Cir. 2011) (citing *Kalish v. Liberty Mutual/Liberty Life Assur. Co.*, 419 F.3d 501, 506 (6th Cir. 2005) (emphasis in original) (internal quotation marks omitted)); *see also Elliot*, 473 F.3d at 618 n.3 (noting that the lower court's reasoning was incorrect "because it relie[d] on a general notion of 'sedentary work' rather than on the duties that [the claimant's] occupation entailed"). The Sixth Circuit and this Court have questioned doctors who review a file and do not take into account intellectual functions required as part of the occupation. *See e.g., Javery*, 741 F.3d at 702 ("We [] found it troublesome that [the doctor reviewing the file] ignored the intellectual aspects of [the claimant's] job as a software engineer."); *Rohr v. Designed Telecomms., Inc.*, No. 2:08-cv-345, 2009 U.S. Dist. LEXIS 32404, at *31–32 (S.D. Ohio, Mar. 30, 2009) (noting that the file review doctor erroneously focused only on the "physical description category assigned to [the claimant's] job" and ignored the "most significant functions . . . the intellectual and/or mental functions").

Plaintiff argues he cannot perform the essential duties of his occupation because of its intellectual requirements. In support, he relies on Dr. Kurpita's report that he cannot work because he cannot concentrate due to pain and headaches, which affect his ability to concentrate, make decisions, and create financial plans. Similarly, he points to Dr. Weber's report that his headaches are worsened by using a computer and concentrating on difficult cognitive tasks. (Pl.'s Resp. & Reply at 13 (citing R. at 00812, 0148, 0150).) Further, Plaintiff argues that it is not only the pain that prevents him from being able to perform the intellectual requirements of his job, but also his medication. (Pl.'s Mot. J. Administrative R. at 18.)

All three of the file reviewers comment on the "sedentary" aspect of Plaintiff's job and his apparent ability to do sedentary work. (*See* R. at 0197, 0088, 0102.) Those reviewers, however, also commented on the cognitive aspects of Plaintiff's occupation. For example, Dr. Hagman stated "[t]here is no indication in the medical records, [the FCE], his correspondences or [his] internet posts that he would have cognitive limitations or restrictions to at least part time sedentary level work." (R. at 0088.) Similarly, Dr. Carlson addressed Plaintiff's claim of cognitive impairment by pointing out that the prescriber of his pain medication ha[d] not precluded him from driving or doing other high-level activities. (R. at 0197.) Dr. Carlson also noted that Plaintiff's construction projects around his home "argue against significant cognitive impairment." (*Id.*) Additionally, in Plaintiff's appeal letter he stated "I have never claimed to have a cognitive impairment," and instead, asserted he was only ever fatigued. (R. at 0969.) Thus, the Court finds Defendant's decision was not arbitrary and capricious for failing to consider the intellectual functions of Plaintiff's occupation.

### 3. Plaintiff Argues Defendant's Reliance on Social Media Was Improper

Plaintiff argues that Defendant's "reliance on Facebook posts, to the exclusion of actual medical evidence, was improper." (Pl.'s Mot. J. Administrative R. at 19.) Defendant argues "nothing in ERISA requires [Defendant] to disregard evidence of [Plaintiff's] activities that demonstrate his functional capabilities, especially when his activities are inconsistent with his claimed symptoms and purported functional limitations." (Def.'s Mot. J. Administrative R. at 16.)

Two of our sister districts have found that reviewing a claimant's Facebook page is not arbitrary and capricious. *See Auston-Conrad v. Reliance Standard Life Ins., Co.*, No. 4:14-cv-127, 2016 U.S. Dist. LEXIS 131047, at *29 (W.D. Ky. Sept. 26, 2016) ("While the social media surveillance may not, by itself, prove that Plaintiff is capable of working forty hours a week, it does refute several of [p]laintiff's claimed limitations. . . . [The defendant] was not required to ignore the inconsistencies between [plaintiff's] assessment of her level of activity and the [social media record] of her activities.") (citing *Rose v. Hartford Fin. Servs. Grp.*, 268 F. App'x 444, 452 (6th Cir. 2008)); *Mendelblatt v. Aetna Life Ins. Co.*, No. 14-cv-12140, 2016 U.S. Dist. LEXIS 21400, at *13, 42 (E.D. Mich. Feb. 22, 2016). The Western District of Kentucky made clear, however, in affirming the use of social media that "there [was] not any evidence in the record that [the social media was] given undue weight. The social media report merely alerted [the defendant] to [the plaintiff's] potential ability to work." *Id.* at *30.

In addition to cases where the claim administer relied on social media, both parties cite cases where the plan administrator watched surveillance videos to observe the claimant's condition as instructive as to how the court should treat Defendant's reliance on Plaintiff's Facebook. Plaintiff states the instant case is like *Kramer v. Revere Life Insurance Company*, where an insurer denied a claim for disability benefits based, in part, on video surveillance of a claimant working

on a sailboat. 571 F.3d 499 (6th Cir. 2009). The Sixth Circuit approved of the lower court's observation of the claimant's activities through the surveillance video, but found that in that instance, the observed activities were not inconsistent with the claimant's ability to work. *Kramer,* 571 F.3d at 507–08. When preparing a boat for winter storage, the Sixth Circuit noted, the claimant could take breaks. *Id.* At work, however, the claimant could take neither pain medication or breaks. *Id.* Additionally, it is rarely necessary to prepare one's boat for winter storage. *Id.*

Defendant cites, among other similar cases, *O'Bryan v. Consol Energy, Incorporated,* where the insurer relied on a surveillance video showing the claimant getting in an out of his car, putting fuel in his vehicle, pushing a riding mower in and out of the garage, and other similar activities. 477 F. App'x 306, 307 (6th Cir. 2012). The physicians who reviewed the claimant's file concluded performing those tasks contradicted his reported symptoms from fibromyalgia. *Id.* at 309. The Sixth Circuit found the denial of benefits based on the video was not arbitrary and capricious. *Id.*

The Court believes that in this instance, Defendant's reliance on Plaintiff's Facebook activity was not arbitrary and capricious. Unlike in *Kramer,* where the surveillance showed the claimant engaged in a single event that was inconsistent with her claims of disability, here, much like in *O'Bryan,* there were numerous actions depicted that were inconsistent with Plaintiff's reported pain. These included extensive construction work and fishing. (R. at 0212–16, 24.)

However, the Court finds that social media posts lack context and can easily be misinterpreted. Additionally, they portray limited information, generally only that which a person wishes to share with the public. They are minimally informative as to a person's medical condition and their ability to perform their work. *See Williamson v. Aetna Life Ins., Co.,* No. 2:17-cv-2653, 2019 U.S. Dist. LEXIS 55468, at *16 (D. Nev. Mar. 31, 2019) (noting that social media posts are

"minimally informative and inherently inaccurate as to a person's medical symptoms" and ability to perform the duties of their employment.").

Nevertheless, based on the abundance of objective evidence that Defendant relied on, its reliance on Plaintiff's Facebook in this instance did not make its decision arbitrary and capricious.

### 4. Plaintiff Argues Defendant Improperly Failed to Consider the FCE

"An FCE is generally a 'reliable and objective method of gauging the extent [to which] one can complete work-related tasks.'" *Caesar*, 464 F. App'x at 435 (citing *Huffaker v. Metro Life Ins. Co.*, 271 F. App'x 493, 500 (6th Cir. 2008)). An FCE has been described as "objective evidence" of a claimant's pain. *See Brooking v. Hartford Life & Accident Ins. Co.*, 167 F. App'x 544, 549 (6th Cir. 2006). Rejecting an FCE without a reasoned explanation supports a finding that an insurer acted in an arbitrary and capricious manner. *See Casear*, 464 F. App'x at 436; *Brooking*, 167 F. App'x at 549.

Plaintiff argues that Defendant "dismisses almost entirely the FCE." (Pl.'s Resp. & Reply at 7.) Additionally, Plaintiff asserts that Dr. Leonard's opinion on the FCE is deficient because the inconsistencies he points out are minor and the physical therapist who performed the test is trained to identify inconsistencies in a claimant's performance. (*Id.*) Defendant argues it properly considered the FCE and chose not to credit it due to its inconsistencies. (Def.'s Resp. & Reply at 14.) Additionally, Defendant argues that Dr. Leonard specifically and sufficiently discussed the FCE when providing his opinion as to Plaintiff's functional capacities. (*Id.*) Defendant points to the inconsistencies in the FCE that Dr. Leonard found such as the fact that the physical therapist stated that Plaintiff's limitations were consistent with lumbar radiculopathy, but a previous EMG showed Plaintiff did not have lumbar radiculopathy. (*Id.*) Dr. Leonard specifically noted he chose

not to base his opinion on the FCE because the physical therapist who performed the FCE made her opinions based on the false premise the Plaintiff suffered from lumbar radiculopathy. (*Id.*)

The Court does not believe that Defendant dismissed the FCE in such a way that causes its decision to be arbitrary and capricious, and neither did the doctor whose opinion Defendant relied on, Dr. Leonard. Defendant stated in its letter to Plaintiff denying his appeal that "the [c]onsulting [n]eurologist stated [the FCE] showed numerous inconsistent findings when compared to [Plaintiff's] medical records." (R. at 00936.) Further, Dr. Leonard, pointed out the inconsistencies which provided a reasoned explanation as to why he did not rely on the FCE. (R. at 0101.) Dr. Leonard noted the FCE's conclusion as to Plaintiff's right grip problems were inconsistent with the neurological examinations performed on Plaintiff, the conclusion as to Plaintiff's fatigued left arm was inconsistent with the prior medical reports, and Plaintiff's inability to kneel but ability to crouch was biomechanically inconsistent. (*Id.*) Defendant was not obliged to rely on the FCE and only needed a reasoned explanation. Defendant provided a reasoned explanation.

## 5. Plaintiff Argues Defendant "Cherry-Picked" Plaintiff's Medical Test Results and Its Own Physician's Opinions

"Complete consensus is not required to establish a reasoned basis for an administrative decision." *Cook,* 494 F.3d at 607 (citing *University Hospitals of Cleveland v. Emerson Electric Com.,* 202 F.3d 839, 847 (6th Cir. 2000)). Instead, "administrator's decision[s] need only be 'sufficiently grounded in reason and evidence to satisfy the least demanding form of judicial review.'" *Id.* In *Cook,* the Sixth Circuit addressed a similar situation when a claimant who had been denied benefits argued that the defendant had insufficiently considered the evidence on the record supporting his claim because it had not considered one of the physician's letters, and the most recent FCE. 494 F.3d at 607. The Sixth Circuit stated "[a]lthough we view [the defendant's]

cursory analysis as somewhat troubling, we cannot conclude on these facts that the omission renders [the defendant's] decision arbitrary or capricious." *Id.* at 608.

Plaintiff argues that Defendant cherry-picked the findings of the medical tests Plaintiff had done including a cervical MRI, and three lumbar MRIs. (Pl.'s Resp. & Reply at 8.)

As was the case in *Cook*, here, the Defendant may have insufficiently considered some small aspects of the record such as certain lines in the MRI reports indicating there was at least some medical cause of Plaintiff's back pain. (*See, e.g.,* R. at 0053, 0868.) It is not the case, however, that this led to Defendant's decision not being sufficiently grounded in reason and evidence. Defendant's decision was supported by enough objective evidence, and its reasoning with sufficient explanation, to satisfy the least demanding form of judicial review.

Similarly, Plaintiff argues that Defendant's decision is arbitrary and capricious because it rejected the opinions of one of its own file reviewers, Dr. Hagman. Dr Hagman, however, concluded that Plaintiff could work "at-least" part-time. (R. at 0088.) As noted previously in this Opinion, the administrative record shows Plaintiff's claim is for total disability and Plaintiff cannot now change his claim. *See infra* Section III.A. Defendant's rejection of this opinion, therefore, does not render its decision arbitrary and capricious, because Dr. Hagman's conclusion is inapplicable here.

### 6. Defendant's Decision Was Not Arbitrary and Capricious

In conclusion, after examining the administrative record and considering Plaintiff's arguments, the Court finds Defendant's decision was not arbitrary and capricious. First, Defendant's reliance on independent physicians' file reviews was not arbitrary and capricious because Defendant adequately explained its decision to rely on the independent physicians instead of Plaintiff's examining physicians. Similarly, Defendant's reliance on the independent

physicians' who did not physically examine Plaintiff was not arbitrary and capricious because Defendant relied on objective evidence to support this decision. Second, Defendant did not act arbitrarily and capriciously by ignoring the intellectual aspects of Plaintiff's occupation because Defendant relied on independent physicians who did consider those aspects. Further, Plaintiff has not argued he is cognitively impaired. Third, Defendant's reliance on Plaintiff's social media was not arbitrary and capricious. Fourth, Defendant did not act arbitrarily and capriciously when weighing the FCE because it provided a reasonable explanation for doing so. Finally, Defendant's choices of medical tests and physicians to rely on did not make its decision arbitrary and capricious. In sum, the Defendant did not act in arbitrarily and capriciously when it denied Plaintiff disability benefits. Thus, Defendant's Motion for Judgment on the Administrative Record is granted as to Count I and Plaintiff's Motion for Judgment on the Administrative Record on Count I is denied.

### B. Plaintiff's Motion to Dismiss Count II and Defendant's Motion for Judgment on the Administrative Record on Count II

Count II of Plaintiff's Second Amended Complaint asserts that Defendant terminated Plaintiff's insurance coverage retroactively and without following proper claims procedures. (Compl. ¶¶ 39, 41.) Defendant, in its Motion for Judgment on the Administrative Record asks the Court to enter judgment in favor of Defendant on Count II. (Def.'s Mot. J. Administrative R. at 20.) Plaintiff filed a Motion to Dismiss Count II without prejudice because he did not exhaust the administrative remedies. (Pl.'s Mem. Supp. Mot. Dismiss at 1, ECF No. 23 [hereinafter Pl.'s Mot. Dismiss].) Defendant filed a response asking the Court not to dismiss Count II unless it is with prejudice. (Def.'s Resp., ECF 28.)

1. **Voluntary Dismissal Under Rule 41(a)(2)**

Federal Rule of Civil Procedure 41(a)(2) provides plaintiffs an avenue to dismiss their own cases. Notwithstanding a few caveats not at issue here, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "Unless the [court's] order states otherwise, a dismissal under this paragraph . . . is without prejudice." *Id.* This Rule exists primarily to protect the interests of the defendant, but courts should consider the equities of dismissal as applied to all parties. *See* James W. Moore et al., 8 Moore's Federal Practice § 41.40[5][A] (3rd ed. 2011). Whether to grant a plaintiff's request under Rule 41(a)(2) falls under the "sound discretion of the district court." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994). District courts properly deny a dismissal without prejudice where the "defendant will suffer 'plain legal prejudice.'" *Rivera v. DePuy Orthopaedics, Inc.*, No. 3:10 DP 20060, 2011 WL 4368981, at *2–3 (N.D. Ohio Sept. 19, 2011) (citing *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947), and *Grover*, 33 F.3d at 718). Plain legal prejudice "does not result merely from the prospect of a second lawsuit on identical issues." *Wakefield v. Children's Hosp, Inc.*, No 2:06-cv-01034, 2009 U.S. Dist. LEXIS 22567, at *6 (S.D. Ohio Mar. 6, 2009).

The following factors guide the "plain legal prejudice" assessment: (1) the defendant's effort and expense in preparing for trial; (2) excessive delay or lack of diligence by the plaintiff in prosecuting the action; (3) insufficiencies in the plaintiff's explanation of the need for a dismissal; and (4) whether a motion for summary judgment is pending. *See Bridgeport Music, Inc. v. Universal-MCA Music Publ'g, Inc.*, 583 F.3d 948, 953 (6th Cir. 2009).

### a. Defendant Argues It Will Suffer Legal Prejudice Because of Its Effort & Expense Preparing for Trial

"[A]bsent strong countervailing evidence that [the movant] has subjected [the non-movant] to *significant* expense, delay, or other prejudice before moving to dismiss the case," a defendant is unlikely to suffer legal prejudice due to their expense and effort preparing for trial. *See Luckey v. Butler Cty.*, No. 1:05-cv-388, 2006 U.S. Dist. LEXIS 3361, at *11 (S.D. Ohio Jan. 13, 2006) (emphasis added); *see also Ferron v. 411 Web Directory*, No. 2:09-cv-153, 2010 U.S. Dist. LEXIS 76049, at *6–7 (S.D. Ohio July 28, 2010) (noting that a natural investment of time and effort in litigation may prove insufficient absent "an unreasonable amount of effort and expense"). Additionally, this Court has noted that "most ERISA cases involve review of denials and do not require any discovery, [because they are] limited to judicial review of the administrative record." *Waldman v. Pitcher*, No. 1:10-cv-238, 2011 U.S. Dist. LEXIS 104616, at *12 (S.D. Ohio June 21, 2011). In ERISA cases this Court has dismissed claims without prejudice under Rule 41(a)(2) when there is "no basis for exorbitant litigation costs." *Id.* at *13.

Defendant argues that dismissal is "unwarranted because [it] expended significant time, effort, and expense filing its dispositive motions . . . and responding to [Plaintiff's] motion for judgment." (Def.'s Resp. at 3.) Plaintiff contends that Defendant has not met its burden of showing a significant expense. (Pl.'s Reply at 3, ECF No. 29.)

The Court agrees with Plaintiff. Defendant's general assertion that it expended "significant time, effort, and expense" without more, is not enough to show dismissal without prejudice will cause Defendant legal prejudice. This is particularly true because this is an ERISA case and thus, there was no significant expense on discovery, for the judgment is based solely on the administrative record. Thus, while the Court is cognizant of the fact that Defendant did expend

costs on its dispositive motion, there is not evidence here that such costs were of such a magnitude so as to cause Defendant legal prejudice if Count II is dismissed without prejudice.

### b. Defendant Argues It Will Suffer Legal Prejudice Because of the Excessive Delay and Plaintiff's Lack of Diligence in Prosecuting the Action

When litigation has been pending for a relatively short amount of time, this Court has dismissed cases on a Rule 41(a)(2) motion, finding no legal prejudice to the nonmovant. *See, e.g, Cogent Sols. Grp., LLC*, No. 2:12-CV-665, 2013 U.S. Dist. LEXIS 165265, at *14 (S.D. Ohio Nov. 20, 2013); (dismissing a claim one year after litigation began); *Wakefield*, 2009 U.S. Dist. LEXIS, at *6–7 (dismissing a claim two years after litigation began). In contrast, when cases have been pending for several years and are close to trial, this Court has denied motions for voluntary dismissal without prejudice finding dismissal would cause legal prejudice to the nonmovant. *See e.g., Linthicum v. Johnson et al.*, No. 1:02-cv-480, 2006 WL 3422687, at *3 (S.D. Ohio Nov. 28, 2006) (denying dismissal of a case that had been pending for over four years and was just twelve days away from trial); *Morgan v. Del Glob. Techs. Corp.*, No. 3:05-cv-123, 2007 WL 3227068, at *7 (S.D. Ohio Oct. 29, 2007) (denying dismissal of a case that had been pending for three years and the discovery and dispositive motions deadlines had been extended for nine months because the movant had not diligently pursued discovery). Additionally, this Court has denied motions for voluntary dismissal upon finding the defendant would suffer legal prejudice when the movant has not adequately prosecuted the claim. *See, e.g., Pardue v. Wal-Mart Stores, Inc.*, No. C-3-06-081, 2007 WL 2902938, at *2–3 (S.D. Ohio Oct. 1, 2007) (denying dismissal when movant failed to prosecute his action by failing to comply with a court order and offering no explanation for the dismissal).

Defendant argues that Plaintiff excessively delayed seeking dismissal because he requested dismissal after Defendant had filed its dispositive motion seeking entry of judgment and waited

until judgment was imminent due to Plaintiff's failure to mount any defense. (Def.'s Resp. at 3.) Additionally, Defendant contends Plaintiff lacked diligence prosecuting this claim because he failed to address it in his dispositive motion and in his response to Defendant's dispositive motion. (*Id.* at 4.) Plaintiff argues that moving to dismiss one year after initially filing is not an excessive delay. (Pl.'s Reply at 3.)

The Court finds there is no excessive delay in dismissing this claim less than two years after litigation began, as this Court has previously dismissed claims that had been pending for this length of time. *See Cogent*, 2013 U.S. Dist. LEXIS, at *14; *Wakefield*, 2009 U.S. Dist. LEXIS, at *6–7. Similarly, the Court finds no excessive delay in dismissing the case after a dispositive motion has been filed. *See infra*, Section III.B.1.d.

In addition, Defendant's argument that Plaintiff's motion to dismiss legally prejudices them because judgment for Defendant is imminent is unpersuasive. In *Grover*, the Ohio Supreme Court answered a certified question stating the plaintiff's cause of action did not exist and so the plaintiff moved for voluntary dismal. *Grover*, 33 F.3d at 717. The district court granted the motion and the defendant appealed. *Id.* The Sixth Circuit reversed, finding that because judgment for the defendant was imminent dismissal was not appropriate. *Id.* This case is unlike *Grover*. A decision in Defendant's favor due to Plaintiff allegedly failing to mount a defense is not imminent.

Finally, Defendant contends that Plaintiff's failure to address this count in his Motion for Judgment on the Administrative Record or in his Response to Defendant's Motion for Judgment on the Administrative record indicates a lack of diligence in prosecuting this claim. Because, however, many of the other factors weigh in favor of dismissal, this alone is not enough to cause Defendant legal prejudice. *See Cogent*, 2013 U.S. Dist. LEXIS at *22–23 (noting that one factor

alone does not control the analysis and instead the factors are a guide for the trial court's discretion) (citing *Ferron*, 2010 U.S. Dist. LEXIS at *5.)

### c. Defendant Argues It Will suffer Legal Prejudice Because Plaintiff's Explanation as to Need for Dismissal Is Insufficient

The Sixth Circuit has provided that when a plaintiff has failed to exhaust administrative remedies, the district court should exercise its discretion to dismiss without prejudice. *Ravencraft v. UNUM Life Ins. Co.*, 212 F.3d 341, 344 (6th Cir. 2000). This is because exhaustion allows "plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Id.* at 343 (citing *Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989).

Defendant argues Plaintiff's explanation for requesting dismissal, that he has not pursued administrative remedies, is insufficient because in his Second Amended Complaint he asserted he did exhaust administrative remedies. (Def.'s Resp. at 2.) The Court notes that based on the administrative record Plaintiff has not yet exhausted administrative remedies for Count II. The Court thus agrees with Plaintiff that needing to exhaust administrative remedies is a sufficient explanation for the need to voluntarily dismiss Count II without prejudice.

### d. Defendant Argues It Will Suffer Legal Prejudice Because Dispositive Motions are Already Pending

The filing of dispositive motions is a factor to be considered, however, "its existence does not mandate a finding of plain legal prejudice." *Rosenthal v. Bridgestone Firestone Inc.*, 217 F. App'x 498, 502 (6th Cir. 2007) (also noting that the factors are a guide for the trial court and "there is no requirement that each of the [] factors be resolved in favor of the moving party before dismissal is appropriate"). In *Luckey*, this Court dismissed an ERISA benefits case without

prejudice even though the defendant had filed a dispositive motion. *Luckey*, 2006 U.S. Dist. LEXIS 5088 at *8.

Defendant argues dismissal without prejudice is improper because its dispositive motion has already been filed. (Def.'s Resp. at 3.) Plaintiff argues that the filing of dispositive motions does not automatically mandate denial of a motion to dismiss and instead because the other factors weigh in favor of dismissal, dismissal is proper. (Pl.'s Reply at 4.)

This Court believes that in this case the filing of the dispositive motions does not require denial of Plaintiff's motion to dismiss. On balance, because Plaintiff did not cause Defendant unreasonable effort or expenses in preparing for trial, did not excessively delay asking for dismissal, and had a sufficient explanation for asking for dismissal without prejudice, the filing of dispositive motions is not enough to cause Defendant legal prejudice. Thus, the Court grants Plaintiff's Motion to Dismiss Count II without prejudice. It follows, therefore, that Defendant's Motion for Judgement on the Administrative Record as to Count II is denied.

## IV.    CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 16), **GRANTS in part and DENIES in part** Defendant's Motion for Judgment on the Administrative Record (ECF No. 19), **and GRANTS** Plaintiff's Motion to Dismiss Count II of the Second Amended Complaint without prejudice (ECF 23). The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

11-15-2019

**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**